IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3286-FL

| | |
|---|---|
| ANTWAN DANIELS, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| PRENTICE BENSTON and PHIL CORBETT, | ) |
| Defendants. | ) |

The matter comes before the court on the parties' cross motions for summary judgment (DE 55, 58). The motions were fully briefed. Also before the court are plaintiff's "Motion to Supplement Mental or Emotional Injury" (DE 82), motion to submit corrective information (DE 86), and motion for judgment (DE 70), which this court construes as a second motion for summary judgment. Defendants did not respond to plaintiff's remaining motions. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants plaintiff's motion to supplement, plaintiff's motion to submit corrective information, and defendants' motion for summary judgment. The court denies the remaining motions.

**STATEMENT OF THE CASE**

On November 19, 2013, plaintiff, a pretrial detainee at the Bladen County Jail (the "jail"), filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 on behalf of himself as well as formerly-named plaintiffs James C. Willis ("Willis"), Edron C. Lewis ("Lewis"), and Melton M. Melvin ("Melvin"). Plaintiff collectively named Donnie Alman ("Alman"), Bladen County Deputy

Sheriff Prentice Benston ("Benston"), Bladen County Chief Jailer Phil Corbett ("Corbett"), Rodney Hester ("Hester"), and Benny Lennon ("Lennon") as defendants. Fellow Bladen County Jail detainees Fredrick Riggins ("Riggins"), Jason Hall ("Hall"), and Sentell W. Tatum ("Tatum") subsequently filed motions to be added as a member of the proposed class action. Plaintiff thereafter filed two motions to amend his complaint. On January 30, 2014, plaintiff filed a medical record indicating a diagnosis of a dislocated shoulder on October 21, 2013.

On July 11, 2014, the court entered an order granting plaintiff's first motion to amend and denying as futile his second motion to amend. The court additionally denied plaintiff's motion to proceed with this action as a class action and denied as moot the motions to be added as a member of the class filed by Riggins, Hall, and Tatum. The court further determined that plaintiff's attempt to join Willis, Lewis, and Melvin as plaintiffs in this action was improper and dismissed these plaintiffs from this action without prejudice.[1] Finally, in an effort to clarify the record, the court directed plaintiff to file one amended complaint setting forth his individual claims.

On August 29, 2014, plaintiff filed his amended complaint and named only Corbett and Benson as defendants. Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs and unsanitary prison conditions in violation of the Fourteenth Amendment to the United States Constitution. On September 18, 2014, the court conducted a frivolity review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915 and allowed plaintiff to proceed with his claim against defendants Corbett and Benston. The court, additionally, dismissed previously named defendants Hester, Lennon, and Alman without prejudice because plaintiff did not name

---

[1] The court has constructively amended the caption in this order to reflect dismissal of formerly-named plaintiffs Melvin, Lewis, and Willis.

these defendants in his August 29, 2014, amended complaint.[2] Plaintiff next filed a motion to expedite, to which he attached various medical bills. The court denied plaintiff's motion to expedite. On October 31, 2014, plaintiff filed a motion for clarification in which plaintiff requested assistance in responding to a request from defendants for copies of filings in this case. The court, in a text order, denied plaintiff's motion as moot given the fact that defendants had access to PACER to download any filings.

On December 17, 2014, plaintiff filed a pleading seeking to supplement the allegations set forth in his original complaint. On January 5, 2015, the court entered a text order denying plaintiff's motion to amend his complaint on the grounds that it was not accompanied by a motion for leave to file an amended complaint. On March 30, 2015, plaintiff filed a motion for a subpoena, which the court denied without prejudice.

On April 23, 2015, plaintiff filed a motion for summary judgment. Defendants then filed a cross-motion for summary judgment on May 20, 2015, and attached the following: affidavits from defendants Benston and Corbett; plaintiff's booking report from the jail; plaintiff's October 24, 2013, sick call request; an October 24, 2013 medical note; and the jail's event log for plaintiff. The motions were fully briefed. Plaintiff next filed a motion for sanctions, which the court denied. Plaintiff thereafter filed a motion for damages, three motions to compel discovery,[3] and a motion for entry of default. On May 26, 2015, plaintiff filed various documents in support of his motion for

---

[2] The court has constructively amended the caption of this order to reflect dismissal of formerly-named defendants Hester, Lennon, and Alman.

[3] The court notes that plaintiff, in his October 23, 2015, motion to compel (DE 75) requests a copy of an x-ray report taken on October 12, 2013, and a release report from Fayetteville Orthopedic, as well as medical records from Wake Med. Plaintiff, however, did not arrive at the jail until October 22, 2013, which is after the October 12, 2013, date plaintiff provided for the records he seeks from Fayetteville Orthopedic. (Corbett Aff. ¶ 3.) Finally, plaintiff makes no allegation that he went to Wake Med during the time period he was at the jail.

3

summary judgment, which include: plaintiff's requests for admissions to defendants; medical records; excerpts from August 7, 2013, February 20, 2014, July 22, 2014, and January 21, 2015, Division of Health Service survey reports; the jail's event log; a February 13, 2015 letter from the Department of Health and Human Services; and a letter from defendant Benston to the Division of Health and Service Regulation. See also, (DE 65). On August 31, 2015, plaintiff filed a second motion for summary judgment, to which he attached his North Carolina Department of Public Safety Duty Status report dated August 3, 2015.

On December 8, 2015, the court entered an order denying plaintiff's motions to compel and motion for entry of default. The court construed plaintiff's motion for damages as a motion to supplement his motion for summary judgment in order to include his proposed damages, and granted plaintiff's motion. Plaintiff next filed a "Motion to Supplement Mental or Emotional Injury."

### STATEMENT OF FACTS

Except as where otherwise noted below, the undisputed facts are as follows. Plaintiff's complaint involves the medical care he received while he was incarcerated at the jail beginning on October 22, 2013. (Corbett Aff. ¶ 3.) Two days after arriving at the jail, plaintiff submitted a sick call request stating "I'm having severe pain in my right shoulder. My head aches bad and I'm spitting up blood and right shoulder blade." (Id. and Ex. B.) A nurse at the jail evaluated plaintiff that same day and diagnosed him with shoulder sprain and pain. (Id. and Ex. C.) The nurse then provided plaintiff with a topical sports cream and Ibuprofen. (Id.)

On November 12, 2013, defendant Corbett requested a sheriff's car so that an officer could transport plaintiff to Fayetteville Orthopedic Clinic (the "clinic") in Elizabethtown, North Carolina. (Id. ¶ 4 and Ex. D.) Corbett attests that "[i]nmates usually will not be taken to specialists such as

4

Fayetteville Orthopedics unless they or the jail have a pre-existing relationship with a doctor at such a clinic and such a visit is absolutely necessary." (Id.)

While plaintiff was at the clinic, defendant Corbett received a call from a woman at the clinic asking what kind of insurance plaintiff had. (Id. ¶ 5.) Corbett told the woman that plaintiff was a detainee at the jail and that he did not know what kind of insurance plaintiff had. (Id.) Defendant Corbett assumed that the woman on the telephone was referring to private insurance.[4] (Id.) Corbett attests that the woman did not ask what insurance the jail had for detainees, and that she did not provide Corbett an opportunity to explain the jail's insurance coverage for detainees because the telephone call was abruptly disconnected. (Id.) The jail was not asked to pay for plaintiff's medical expenses at the clinic on the date at issue. (Id. ¶ 6.)

Although plaintiff does not provide specific details regarding his care or diagnosis, plaintiff states that he received medical care from the clinic on the date at issue. (Pl's Resp. (DE 64) p. 3; (DE 65), p. 1.) Plaintiff then was released from the jail on November 27, 2013. (Corbett Aff. ¶ 8.) Plaintiff further states that he has attended "several doctor visits" related to his shoulder condition. (Pl's Resp. (DE 64) p. 3.) Plaintiff additionally states that he has been diagnosed with severe arthritis and will require surgery on his rotator cuff. (Id.)

In addition to the facts regarding his medical care, the court now sets forth the facts pertaining to plaintiff's alleged prison conditions. In his complaint, plaintiff asserts that there is asbestos on the jail's pipes, holes in the windows, and toilets that overflow with feces. Plaintiff additionally states the following with respect to the conditions at the jail:

---

[4] Corbett attests that Bladen County and the sheriff's office have contracted with Prime Healthcare Inc. for the past four years to provide medical care for inmates, and that the jail uses insurance cards from Prime Healthcare Inc. to cover medical expenses when a detainee is taken to an outside physician or hospital. (Id. ¶ 5.)

5

> Bladen County jail does not provide a clean jail. The jail stays overcrowded, holes in windows and wasps has known to have bitten inmates and jailors too. Constant overflowing of human fec[es] [that] got on my personal property books, pens, stamps, socks, and one [of] my bed sheets too and I asked officer to please let me have clean sheets, but was refused.

(DE 42, p. 3.) Plaintiff also states that he asked defendant Benston for cleaning supplies to clean the mold in the shower. (DE 65, p. 5.) Plaintiff states that defendant Benston agreed to provide the supplies, but that he never received the supplies. (Id.)

Plaintiff also generally alleges that the jail had contaminated water, poor drainage, and mold. (DE 71, p. 3.) Plaintiff states that, as a result of the poor ventilation and the presence of sewage, he experienced "severe headaches." (DE 65, p. 3.) Plaintiff also states that one inmate threw human feces down the hallway. (Id.)

## DISCUSSION

A.   Motions to Supplement

Plaintiff filed a motion to supplement his complaint to request relief for "mental or emotional injury" and a motion to submit corrective information. For good cause shown, plaintiff's motions are GRANTED. See Fed. R. Civ. P. 15(a).

B.   Defendants' Motion for Summary Judgment

1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

    2.    Analysis

        a.    Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that plaintiff failed to exhaust administrative remedies before filing this action. See Jones v. Bock, 549 U.S. 199, 216 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The Prisoner Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006). Exhaustion is mandatory. Woodford, 548 U.S. at 84; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."); Anderson, 407 F.3d at 677. A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

Plaintiff asserts he attempted to utilize the jail's administrative remedy process, but that defendant Corbett destroyed any grievances he attempted to submit. ((DE 64), p. 1.) "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir.

7

2008).  Plaintiff's allegations create a genuine issue of material fact as to whether detention center staff prevented him from exhausting his administrative remedies.  See Hill v. Haynes, 380 F. App'x 268, 272-273 (4th Cir. 2010).  Thus, defendants' motion for summary judgment is DENIED as to this ground.

                b.        Deliberate Indifference to Serious Medical Needs

Defendants assert the defense of qualified immunity.  Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first determines whether defendants violated plaintiff's constitutional rights. Plaintiff alleges that defendants violated his Fourteenth Amendment rights because they were deliberately indifferent to his medical needs.  As a pretrial detainee, plaintiff's claims are evaluated under the Due Process Clause, rather than the Eighth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).  However, the due process rights of detainees are at least coextensive with the Eighth Amendment rights of convicted prisoners, and perhaps greater.  Riley v. Dorton, 115 F.3d 1159, 1166-67 (4th Cir. 1997), abrogated on other grounds by, Wilkins v. Gaddy, 559 U.S. 34 (2010). Accordingly, plaintiff's Fourteenth Amendment due process claims will be analyzed under the Eighth Amendment.

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"–and the second prong is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (quotations omitted).

The court assumes, without deciding, that plaintiff is able to satisfy the objective prong of the Eighth Amendment test. Accordingly, the court focuses its inquiry on the second prong-whether defendants acted with deliberate indifference to his serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

The court begins with plaintiff's Fourteenth Amendment claim that defendant Corbett acted with deliberate indifference to plaintiff's serious medical needs. The record reflects the only involvement defendant Corbett had with plaintiff's medical care was to arrange transportation for plaintiff to and from the clinic on November 12, 2013, and a telephone conversation with a woman

9

from the clinic regarding plaintiff's insurance. Plaintiff does not make any claim arising out of defendant Corbett's transportation arrangements. Thus, the court focuses on defendant Corbett's telephone conversation with the clinic.

The record reflects that on November 12, 2013, a woman from the clinic asked defendant Corbett over the telephone whether plaintiff had insurance, and defendant Corbett responded that plaintiff did not have insurance. Plaintiff, however, has provided no evidence that he was adversely affected by defendant Corbett's represensations. By plaintiff's own admission, the clinic provided plaintiff medical treatment on November 12, 2013. (Pl.'s Resp. (DE 64), p. 3.) Even if plaintiff did not receive treatment at the clinic, he has not presented any evidence that he subsequently complained to Corbett that he required additional care for his shoulder. Plaintiff, additionally, has not presented any evidence that the jail refused to pay for any care he received on November 12, 2013.[5] As a result, there is no evidence that defendant Corbett intentionally disregarded plaintiff's medical needs. On the contrary, the record reflects that defendant Corbett took steps to facilitate the procurement of plaintiff's medical care by arranging plaintiff's transportation to and from the clinic on November 12, 2013. (Corbett Aff. ¶ 4 and Ex. D.) Based upon the foregoing, plaintiff failed to establish the subjective element of the constitutional test for this claim.

To the extent plaintiff seeks to hold defendant Corbett responsible for the medical care he received from the jail's medical staff, plaintiff again fails to establish a constitutional violation. The record in this case reflects that plaintiff was evaluated and treated by a nurse on the same date that

---

[5] Plaintiff submitted as evidence a bill for medical care indicating a February 26, 2013, date of service. ((DE 38), p. 3.) Plaintiff was incarcerated at the jail from October 22, 2013, through November 27, 2013. (Corbett Aff. ¶¶ 3, 8 and Ex. D.) Thus, the medical bills presented by plaintiff are not applicable to the instant action, and plaintiff has not alleged that he presented any medical bills to the jail for care provided on November 12, 2013, or that the jail refused to pay any such bills.

10

Case 5:13-ct-03286-FL   Document 88   Filed 01/21/16   Page 10 of 17

he made a sick call request complaining of shoulder pain. (Corbett Aff. ¶ 3 and Exs. B, C.) Aside from plaintiff's conclusory allegation that he complained to defendant Corbett about his medical condition on an unspecified date, there is no evidence that defendant Corbett had any involvement with plaintiff's medical care prior to November 12, 2013, when he arranged transportation for plaintiff to the clinic. Plaintiff's conclusory allegations are insufficient to defeat a properly supported motion for summary judgment. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-moving party's] case.") (citation omitted). Regarding the care plaintiff received at the jail prior to November 12, 2013, as the Chief Jailer, defendant Corbett was entitled to rely on the judgment of medical personnel at the jail for the appropriate medical treatment of inmates such as plaintiff. Shakka, 71 F.3d at 167; Miltier v. Beorn, 896 F.2d 848, 854–55 (4th Cir. 1990), overruled on other grounds by, Farmer, 511 U.S. at 840. Thus, plaintiff fails to establish the subjective prong of the constitutional test.

To the extent plaintiff alleges that the treatment he received may not have been effective, this does not give rise to a constitutional violation. See, e.g., Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); see also, Starling v. United States, 664 F. Supp. 2d 558, 569-70 (D.S.C. 2009) ("The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation."). Based upon the foregoing, plaintiff has not established the subjective element of his deliberate indifference claim, and there is no constitutional violation. Thus, defendant Corbett is entitled to qualified immunity and his motion for summary judgment is GRANTED. Plaintiff's motions for summary judgment are DENIED.

11

The court next addresses plaintiff's claim that defendant Benston acted with deliberate indifference to his serious medical needs. Plaintiff's allegations against Benston fail to state a claim because they are based upon a theory of *respondeat superior*, as opposed to supervisory liability, in that plaintiff failed to allege facts sufficient to establish any deliberate indifference, tacit authorization, or any personal involvement whatsoever on behalf of Benston. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 n. 58 (1978) (holding that *respondeat superior* is unavailable under § 1983); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth requirements to properly assert a supervisor liability claim under § 1983). Even if plaintiff had alleged personal knowledge on behalf of Benston, plaintiff still would not be entitled to relief because, as stated, non-medical prison officials are entitled to rely on the judgment of medical personnel as to the appropriate medical treatment of inmates. Shakka, 71 F.3d at 167; Farmer, 511 U.S. at 840. Based upon the foregoing, defendant Benston is entitled to qualified immunity and his motion for summary judgment is GRANTED for this claim. Plaintiff's motions for summary judgment are DENIED for this claim.

    c.  Prison Conditions

Plaintiff asserts that his prison conditions at the jail violated the Fourteenth Amendment because the jail had asbestos on the pipes, holes in the windows, and toilets that overflowed. As stated, "[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler, 989 F.2d at 1379 (4th Cir. 1993) (internal quotation omitted).

Plaintiff was incarcerated at the jail for a period of approximately five weeks. During this time period plaintiff was a detainee at a jail, not a guest in a hotel, and it should be expected that conditions in such a setting are often times less than ideal. See, e.g., Bell v. Wolfish, 441 U.S. 520, 537 (1979) ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment .'"); see, e.g., Bevarti v. Smith, 120 F.3d 500, 504 (4th Cir. 1997) (holding that where inmates were kept in solitary confinement in cells infested with vermin, smeared with human feces and urine, flooded with water, and unbearably hot, received cold food and in small portions, infrequently received clean clothing, linen and bedding, were only permitted to leave their cells three to four times per week, and were denied outside recreation, educational, or religious services, conditions in administrative segregation were not so atypical that exposure to them for six months imposed significant hardship in relation to ordinary incidents of prison life, as required to support claim that segregation violated inmates' procedural and substantive due process rights); Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir.1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel."). Thus, plaintiff fails to establish the objective prong of the constitutional test.

As for the subjective prong of the constitutional test, plaintiff asserts that defendant Benston was aware of the mold issue at the jail because plaintiff asked him for cleaning supplies. ((DE 65), p. 4.) Plaintiff admits that Benston agreed to provide the cleaning supplies, but states that he never received the supplies. (Id.) Plaintiff, however, does not allege that defendant Benston was aware of the fact that plaintiff did not receive the cleaning supplies. Plaintiff further does not provide any evidence to reflect that plaintiff otherwise complained to defendant Benston or Corbett about the

13

alleged unconstitutional prison conditions while he was at the jail.[6] Plaintiff, instead attributes notice of the complained of conditions to Division of Health and Safety Regulation survey reports which were conducted on August 7, 2013, February 20, 2014, July 22, 2014, and January 21, 2015. See ((DE 63), p. 7.) The surveys cite several deficiencies at the jail such as mold, chipped paint, and plumbing issues. (Id.) The record, however, reflects that defendant Benston responded to the survey reports and took steps to remedy the issues cited by the Division of Health and Safety Regulation. (Id. p. 18.) However, most importantly, there is no evidence that plaintiff notified either defendant that he was being subject to prison conditions which were causing him adverse consequences, and that either defendant disregarded a risk of harm to plaintiff.

To the extent plaintiff alleges that there was overcrowding at the jail, mere allegations of overcrowding are insufficient to rise to a constitutional violation. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (finding that housing two inmates in a cell designed for one does not, without more, violate the Eighth Amendment); Switzer v. Thomas, No. 5:12cv56, 2013 WL 693090, at *5 (W.D. Va. Feb. 25, 2013) ("[Plaintiff's] being subject to overcrowding resulting in being forced, along with several other inmates, from time to time to sleep on mats on the floor does not present an Eighth Amendment claim based on dangerous jail overcrowding or long-standing sanitation problems), aff'd, 535 F. App'x 312 (4th Cir. 2013); Sims v. Lexington County Det. Ct., No. 3:06-3490-PMD, 2008 WL 216345, at *3-4 (D.S.C. 2008) (finding no violation where plaintiff alleged that he "had to sleep on the floor with a toilet above his head" when only *de minimis* injuries resulted). Thus, plaintiff fails to establish a constitutional violation.

---

[6] The court notes that the fact plaintiff states he requested clean sheets from an unidentified officer, but that the officer refused, does not impute any knowledge on behalf of either named defendant in this case.

To the extent plaintiff alleges that the pipes were wrapped in asbestos, he again fails to establish a constitutional violation. In order to state a constitutional violation arising out of exposure to asbestos pipes, an inmate must allege facts sufficient to establish that he was exposed to an unreasonably high level of asbestos. See McNeil v. Lane, 16 F.3d 123, 125 (7th Cir. 1995). Plaintiff has not met his burden in this case. Thus, plaintiff fails to establish a constitutional violation.

To the extent plaintiff seeks to bring claims pertaining to the prison conditions at the jail on behalf of other inmates, his claim fails. Plaintiff, as a *pro se* pretrial detainee, lacks standing to litigate this action on behalf of other inmates. See Smith v. Frye, 488 F.3d 263, 272 (4th Cir. 2007) (explaining "that under Article III of the United States Constitution, a plaintiff . . . cannot rest his claim to relief on the legal rights or interests of third parties."); Myers v. Loudoun County Public Schools, 418 F.3d 395, 400 (4th Cir. 2005) ("An individual unquestionably has the right to litigate his *own* claims in federal court, before both the district and appellate courts . . . . The right to litigate for oneself, however, does not create a coordinate right to litigate for others.") Accordingly, plaintiff may not bring this action on behalf of other detainees or inmates at the jail.

Based upon the foregoing, the court finds that plaintiff's claims, which are supported only by his bare assertions, are insufficient to raise a genuine issue of fact as to whether any of his constitutional rights were violated. See Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (holding that changes in conditions of confinement and the denial of privileges are matters that every prisoner can anticipate and are necessarily functions of prison management and must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently). Because plaintiff has failed to establish a constitutional violation, defendants are

15

entitled to qualified immunity for plaintiff's prison conditions claims and defendants' motion for summary judgment is GRANTED for these claims. Plaintiff's motions for summary judgment are DENIED.

C.     Supplemental Jurisdiction

To the extent plaintiff alleges any negligence-related state law claims the court declines to exercise jurisdiction over such claims. A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also, Gantt v. Whitaker, 203 F. Supp.2d 503, 512 (M.D.N.C. Feb. 26, 2002) (declining to exercise supplemental jurisdiction over plaintiff's state law claims including those again the sheriff's official bond), aff'd, 57 F. App'x 141 (4th Cir. 2003) . The court has dismissed plaintiff's § 1983 claims, which were the sole claims over which it had original jurisdiction. In the interest of judicial economy, fairness, and comity, the court will not exercise supplemental jurisdiction over plaintiff's state law negligence claims. Thus, plaintiff's state law negligence claims are dismissed without prejudice.[7]

## CONCLUSION

For the foregoing reasons, the court rules as follows:

    (1)     Plaintiff's motions for summary judgment (DE 55, 70) are DENIED;

---

[7] Pursuant to 28 U.S.C. § 1367(d), the state statute of limitations period shall be tolled for a period of at least 30 days after dismissal. Estate of Manook v. Research Triangle Institute, Intern, No. 5:10-CV-72-D, 5:10-CV-73-D, 2010 WL 3199874, at *5 (E.D.N.C. Aug. 12, 2010); Coleman v. Smith, No. 3:08-3675-JFA, 2010 WL 569662 at *4 n.3 (D.S.C. Feb. 11, 2010) ("Pursuant to 28 U.S.C. § 1367(d), the period of limitations shall be tolled for a period of at least thirty days after dismissal."); but see, Katema v. Midwest Stamping Co., 180 F. App'x 427, 428 (4th Cir. 2006) (finding that the district court abused its discretion in declining to exercise its supplemental jurisdiction under § 1367 because plaintiff's state law claims would be time-barred in state court and because the court had diversity jurisdiction over plaintiff's claim).

16

(2) Plaintiff's "Motion to Supplement Mental or Emotional Injury" (DE 82) and motion to submit corrective information (DE 86) are GRANTED;

(3) Defendants' motion for summary judgment (DE 58) is GRANTED, and plaintiff's state law negligence claims are dismissed without prejudice;

(4) The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 21st day of January, 2016.

*[signature]*

LOUISE W. FLANAGAN
United States District Judge